JUDGE ABRAMS

13 CV 0857

PREET BHARARA
United States Attorney for
the Southern District of New York
By: SHARON COHEN LEVIN
MARTIN S. BELL
Assistant United States Attorneys
One St. Andrew's Plaza
New York, New York 10007
Tel. (212) 637-1060/2463

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RECEIVED FEB 05 2013 U.S.D.C. S.D. N.Y. CASHIERS

UNITED STATES OF AMERICA

-v.-

ONE SAUROLOPHUS ANGUSTIROSTRIS (HADROSAUR) SKELETON OFFERED FOR SALE AT THE I. M. CHAIT GALLERY/AUCTIONEERS SALE NH1205 AS LOT NUMBER 218;

ONE OVIRAPTOR MATRIX CONTAINING THE REMAINS OF AT LEAST FIVE OVIRAPTOR SKELETONS RECOVERED FROM A RESIDENTIAL HOME IN GAINESVILLE, FLORIDA ON OR ABOUT OCTOBER 17, 2012;

ONE NEARLY COMPLETE TYRANNOSAURUS BATAAR SKELETON RECOVERED FROM A BARN LOCATED IN O'BRIEN, FLORIDA ON OR ABOUT NOVEMBER 20, 2012;

ONE NEARLY COMPLETE SAUROLOPHUS ANGUSTIROSTRIS (HADROSAUR) SKELETON RECOVERED FROM A BARN LOCATED IN O'BRIEN, FLORIDA ON OR ABOUT NOVEMBER 20, 2012; AND

ONE NEARLY COMPLETE OVIRAPTOR SKELETON RECOVERED FROM A RESIDENTIAL DWELLING IN ARCHER,

VERIFIED COMPLAINT

13 Civ.

FLORIDA ON OR ABOUT NOVEMBER 20, 2012; :

:

Defendants-in-rem.

:

- - - - - - - - - - - - - - - - - - x

**I. JURISDICTION AND VENUE** . . . . . . . . . . . . . . . . . . 3

**II. PROBABLE CAUSE FOR FORFEITURE** . . . . . . . . . . . . . . . 4

**A. The Saurolophus Angustirostris (Hadrosaur)** . . . . . . 5

**i. The Chait Gallery Angustirostris** . . . . . . . . 5

**ii. The O'Brien Angustirostris** . . . . . . . . . . . 8

**B. The Oviraptors** . . . . . . . . . . . . . . . . . . . 9

**i. The Gainesville Oviraptor** . . . . . . . . . . . 9

**ii. The Archer Oviraptor** . . . . . . . . . . . . . 10

**C. The O'Brien Bataar** . . . . . . . . . . . . . . . . 11

**D. Eric Prokopi** . . . . . . . . . . . . . . . . . . . 12

**E. Mongolian Law** . . . . . . . . . . . . . . . . . . . 13

**i. Mongolian Constitution** . . . . . . . . . . . . 14

**ii. Mongolian Rules to Protect the Antiquities** . . 15

**iii. Mongolian Law on Cultural Heritage** . . . . . . 16

**iv. Criminal Law of Mongolia** . . . . . . . . . . . 17

**v. Mongolian Court Decision** . . . . . . . . . . . 19

**III. CLAIMS FOR FORFEITURE** . . . . . . . . . . . . . . . . . 19

Plaintiff United States of America, by its attorney, Preet Bharara, United States Attorney for the Southern District of New York, for its verified complaint alleges, upon information and belief, as follows:

## I. JURISDICTION AND VENUE

1. This action is brought by the United States of America pursuant to Title 18, United States Code, Sections 545 and 981(a)(1)(C) and Title 19, United States Code, Section 1595a(c) seeking the forfeiture of the following:

A. One Saurolophus angustirostris (Hadrosaur) skeleton offered for sale at the I. M. Chait Gallery/Auctioneers sale NH1205 as lot number 218;

B. One Oviraptor Matrix containing the remains of at least five oviraptor skeletons recovered from a residential home in Gainesville, Florida on or about October 17, 2012;

C. One nearly complete Tyrannosaurus bataar skeleton recovered from a barn located in O'Brien, Florida on or about November 20, 2012;

D. One nearly complete Saurolophus angustirostris (Hadrosaur) skeleton recovered from a barn located in O'Brien, Florida on or about November 20, 2012; and

E. One nearly complete Oviraptor skeleton recovered from a residential dwelling in Archer, Florida on or about November 20, 2012;

(A through E collectively, the "Defendant Properties").

2. This Court has jurisdiction pursuant to Title 28, United States Code, Sections 1345 and 1355.

3. Venue is proper under Title 28, United States Code, Section 1355(b)(1)(A) because the acts or omissions giving rise to the forfeiture occurred within the Southern District of New York.

4. The Defendant Properties are presently in the custody of Customs and Border Protection, Department of Homeland Security.

## II. **PROBABLE CAUSE FOR FORFEITURE**

5. The Gobi Desert, namely the Nemegt Basin within the Gobi Desert, which is located in Mongolia, is a fertile fossil field of dinosaur relics.

6. There are three major geological formations in the area of the Nemegt Basin, i.e. the Nemegt Formation, the Barun Goyot Formation and the Djadochta Formation. All three formations contain different fossils from different geological time periods.

7. All fossilized dinosaur bones found with the Nemegt Formation have a distinctive color to them as a result of the soil composition of Nemegt Formation.

**A. The Saurolophus angustirostris**

8. The Saurolophus angustirostris[1] ("Saurolophus angustirostris"), a native of Mongolia, which was first discovered in the 1947-49 Polish-Mongolian Paleontological Expedition, is a species of dinosaur from the late Cretaceous period, and lived approximately 68 million years ago.

9. Due to the specific soil composition of the Nemegt Formation, Saurolophus angustirostris fossils uncovered from that Formation have a particularized coloring.

**i. The Chait Gallery Angustirostris**

10. On or about May 6, 2012, California based auction house I. M. Chait Gallery/Auctioneers ("Chait Gallery") offered a Saurolophus angustirostris skeleton for sale as lot number 218 (the "Chait Gallery Angustirostris") in the Chait Gallery NH1205 May 6, 2012 internet sale on www.chait.com (the "Chait May 6, 2012 Sale").

11. The Chait Gallery Angustirostris was described on the Chait Gallery auction website, www.chait.com, as:

> SUPERB CRESTED HADROSAUR SKELETON
> Saurolophus angustirostris
> Late Cretaceous
> Central Asia

[1] Saurolophus angustirostris dinosaurs are a genus of large hadrosaurus or duckbill dinosaurs. The Saurolophus genus of dinosaurs has been found in both North America and Asia. However, the angustirostris species has only been found in Mongolia, specifically the Nemegt Formation within the Gobi Desert of Mongolia.

> . . . the Asian species represented here was the largest known at nearly 40 feet long, making it as large as a modern bus.

12. Prior to the Chait May 6, 2012 Sale, in or about February, 2012, Chait Gallery purchased a fifty percent (50%) ownership interest in the Chait Gallery Angustirostris from Eric Prokopi ("Prokopi"). In consideration for said sale, Chait Gallery paid Prokopi $50,000 in two installments, one in the amount of $45,000 on or about February 13, 2012 and one in the amount of $5,000 on or about April 11, 2012. At the time of the purchase, the Chait Gallery Angustirostris was located in Florida and subsequently shipped by Prokopi to Chait Gallery in California on or about April 24, 2012.

13. On or about April 5, 2012, Prokopi sent Chait Gallery an email describing the Chait Gallery Angustirostris as "species . . . Saurolophus angustirostris, late cretaceous, nemegt formation, Mongolia."

14. On or about May 30, 2012, after the Chait Gallery Angustirostris failed to sell at the Chait May 6, 2012 Sale, Chait Gallery purchased the remaining fifty percent (50%) interest in the Chait Gallery Angustirostris from Prokopi for approximately $25,000.

15. On or about, July 3, 2012, at the request of the United States, Dr. Mark A. Norell, Chairman and Curator of the Division of Paleontology of the American Museum of Natural

History viewed the Chait May 6, 2012 Sale listing for the Chait Gallery Angustirostris on the Chait Gallery website, www.chait.com. Dr. Norell has concluded that the Chait Gallery Angustirostris is "a very well preserved skeleton of Saurolophus angustirostris." Dr. Norell has also stated that the Saurolophus angustirostris "is only known from the Late Cretaceous (about 68 million years ago) Nemegt Formation of southern Mongolia." Attached hereto as Exhibit A is a copy of a letter from Dr. Norell dated July 3, 2012 regarding the Chait Gallery Angustirostris.

16. On September 20, 2012, Magistrate Judge Gabriel W. Gorenstein, Southern District of New York, issued a seizure warrant authorizing the seizure of the Chait Gallery Angustirostris. In issuing the seizure warrant, Magistrate Judge Gorenstein found that probable cause existed to believe that the Chait Gallery Angustirostris was subject to seizure and civil forfeiture pursuant to Title 18, United States Code, Sections 545 and 981(a)(1)(C) and Title 19, United States Code, Section 1595a(c).

17. On or about September 27, 2012, law enforcement agents from Immigration and Customs Enforcement/Homeland Security Investigations ("ICE/HSI"), Department of Homeland Security, seized the Chait Gallery Angustirostris (the "Chait Gallery Angustirostris Seizure").

18. Subsequent to the Chait Gallery Angustirostris Seizure, Chait Gallery informed the United States that it agrees to relinquish all right, title, and interest it may have in the Chait Gallery Angustirostris.

**ii. <u>The O'Brien Angustirostris</u>**

19. In or about November of 2012, ICE/HSI agents became aware, pursuant to an ongoing investigation, that one nearly complete Saurolophus angustirostris (Hadrosaur) skeleton (the "O'Brien Angustirostris") had been imported from Mongolia into the United States with the use of false statements on importation documents and was being stored in a barn in O'Brien, Florida.

20. On or about November 16, 2012, Magistrate Judge James C. Francis, IV, Southern District of New York, issued a seizure warrant (the "November 16, 2012 Seizure Warrant") finding that probable cause existed to believe that the O'Brien Angustirostris, and two other fossils,[2] are subject to seizure and civil forfeiture pursuant to Title 18, United States Code, Sections 545 and 981(a)(1)(C) and Title 19, United States Code, Section 1595a(c).

---

[2] Two other dinosaur fossils, a Tyrannosaurus bataar and another Oviraptor, as described in more detail below, were also included in the November 16, 2012 Seizure Warrant.

21. On or about November 20, 2012, pursuant to the November 16, 2012 Seizure Warrant, ICE/HSI Agents seized the O'Brien Angustirostris from a barn in O'Brien Florida.

**B. <u>The Oviraptors</u>**

22. The Oviraptor, a native of Mongolia, is a small theropod dinosaur from the late Cretaceous period, approximately 75 million years ago and was first discovered in 1924 in Mongolia.

**i. <u>The Gainesville Oviraptor</u>**

23. On or about October 16, 2012, United States Magistrate Judge Gary R. Jones, Northern District of Florida, issued a search warrant (the "Gainesville Residence Search Warrant") finding that probable cause existed to search a residence in Gainesville, Florida (the "Gainesville Residence"). The Gainesville Residence Search Warrant authorized members of law enforcement to seize, *inter alia,* dinosaur fossils and any documents or records related to the import, export or sale of dinosaur fossils.

24. On October 17, 2012, while law enforcement officers were executing the Gainesville Residence Search Warrant, a delivery truck belonging to "Roadrunner Transportation Services," a private delivery company, arrived at the Gainesville Residence. The delivery driver advised law enforcement that he had a delivery that consisted of a large crate, weighing

approximately 400 pounds and containing "fossils and stone" from the I.M. Chait Gallery (the "Crate Delivery").

25. Subsequent to the arrival of the Crate Delivery, on October 17, 2012, United States Magistrate Judge Gary R. Jones, Northern District of Florida, issued a search warrant (the "Crate Warrant") finding that probable cause existed to search and seize the Delivery Crate.

26. During the execution of the Crate Warrant, the Crate was opened and it was discovered that the Crate contained a fossil display piece, to wit, One Oviraptor Matrix containing the remains of at least five oviraptor skeletons (the "Gainesville Oviraptors").

27. Further investigation revealed that the Gainesville Oviraptors were one in the same as the Oviraptors that had been offered for sale by Chait Gallery as Lot Number 291 on or about December 13, 2009.

28. Subsequent investigation further revealed that the Gainesville Oviraptors, which are from Mongolia, were transported into the United States with the use of false statements on importation documents.

**ii. <u>The Archer Oviraptor</u>**

29. In or about November of 2012, ICE/HSI agents became aware, pursuant to an ongoing investigation, that a nearly complete Oviraptor Skeleton (the "Archer Oviraptor") had been

imported from Mongolia into the United States with the use of false statements on importation documents and was being stored in a residence in Archer, Florida. As a result of this information, the aforementioned November 16, 2012 Seizure Warrant was obtained.

30. On or about November 20, 2012, pursuant to the November 16, 2012 Seizure Warrant, ICE/HSI agents seized the Archer Oviraptor from a residence in Archer Florida.

**C. <u>The O'Brien Bataar</u>**

31. The Tyrannosaurus bataar, a native of Mongolia, is a dinosaur from the late Cretaceous period, approximately 70 million years ago. Tyrannosaurus bataar fossils were first discovered in 1946, during a joint Soviet-Mongolian expedition to the Gobi Desert in the Mongolian Ömnögovi Province.

32. Since the Soviet-Mongolian Gobi Desert expeditions in the 1940s there have been several additional expeditions, all of which have recovered Tyrannosaurus bataar fossils from the Gobi Desert.

33. Entire Tyrannosaurus bataar fossils have only been recovered from a small area in the Gobi Desert known as the Nemegt Basin located in Mongolia. Small fragmentary pieces of Tyrannosaurus bataar fossils have been located in neighboring countries. However, full skeletal remains of Tyrannosaurus

bataars have only been known to come from the Nemget Formation within Mongolia's Gobi Desert.

34. Due to the specific soil composition of the Nemegt Formation, Tyrannosaurus bataar fossils uncovered from that Formation have a particularized coloring.

35. In or about November of 2012, ICE/HSI agents became aware, pursuant to an ongoing investigation, that a nearly complete Tyrannosaurus bataar skeleton (the "O'Brien Bataar") had been imported from Mongolia into the United States with the use of false statements on importation documents and was being stored in a barn in O'Brien, Florida. As a result of this information, the aforementioned November 16, 2012 Seizure Warrant was obtained.

36. On or about November 20, 2012, pursuant to the aforementioned November 16, 2012 Seizure Warrant, ICE/HSI agents seized the O'Brien Bataar from a barn in O'Brien, Florida.

**D. <u>Eric Prokopi</u>**

37. Prokopi, who has identified himself as a "commercial palaeontologist" was arrested in October of 2012 on charges related to the illegal importation and transportation of dinosaur fossils and the use of false or misleading information on customs importation forms.

38. On or about December 27, 2012, Prokopi plead guilty, to an Information, 12 Cr. 981 (AKH), (the "Information")

to conspiring to smuggle goods into the United States, to wit, a Chinese dinosaur fossil in 2010, in violation of Title 18, United States Code, Sections 371 and 545 (Count One); smuggling goods by means of false statements, to wit, causing misstatements on customs importation forms from 2011 and 2012 related to the importation of dinosaur fossils from Mongolia into the United States, in violation of Title 18, United States Code, Section 542 (Count Two); and interstate transportation of goods converted by fraud or conversion in violation of Title 18, United States Code, Section 2314 (Count Three).

39. As part of his plea Prokopi admitted the forfeiture allegation contained within the Information and agreed to relinquish all right, title, and interest he may have in several dinosaur fossils, including the Defendant Properties.

**E. <u>Mongolian Law</u>**

40. Since as early as 1924, when Mongolia became an independent nation, the Government of Mongolia has prohibited the personal or non-state ownership of items of cultural significance, such dinosaur remains, such as the Defendant Properties.

41. Mongolia became a signatory to the United Nations Educational, Scientific and Cultural Organization, Convention on the Means of Prohibiting and Preventing the Illicit Import,

Export and Transfer of Ownership of Cultural Property on May 23, 1991.

i. **Mongolian Constitution**

42. Article Three, Section One of the People's Republic of Mongolia Constitution of 1924, specifically states

> [b]ecause/since all lands and resources within their subsoil, forests, water and the natural resources within them, as well as the culture and characteristics of Mongolia which have been in possession of the people since ancient times do meet the customs of the present state and its people, all assets and resources mentioned above shall be under the possession of the people, thus making private property of them prohibited.

43. In 1940, the Mongolia government enacted the 1940 People's Republic of Mongolia Constitution. Article 5 of the 1940 People's Republic of Mongolia Constitution restated the same principle contained within Article 3, Section 1 of the 1924 People's Republic of Mongolia Constitution, that being "all lands and resources within them and their subsoil . . . and the resources within them . . . are the property of the state, in other words, the asset of the people."

44. Article 10 of the 1960 People's Republic of Mongolia Constitution, once again restated the same principles contained within Article 3, Section 1 of the 1924 Constitution and Article 5 of the 1940 Constitution, again that being that "all lands and resources within them and their subsoil . . . and

the resources within them . . . are the property of the state, in other words, the asset of the people."

45. More recently, in 1992, the Mongolian Government enacted the current Constitution of Mongolia which again provides that dinosaur fossils are property of the Government of Mongolia. Specifically, Article 7 of the current Constitution of Mongolia provides that "Historical, cultural, scientific and intellectual heritages of the Mongolian People shall be under State protection."

**ii. <u>Mongolian Rules to Protect the Antiquities</u>**

46. Since at least 1924, Mongolian Law has characterized dinosaur fossils as property of the Government of Mongolia.

47. Article One of the 1924 Mongolian Rules to Protect the Antiquities states that "all antique items and relics of the past found within the territory of Mongolia shall be owned by Mongolia." "Antiques and relics" are further defined in Article Two, Section Five of the 1924 Mongolian Rules to Protect the Antiquities as "[p]aleonthological items such as remnants of ancient plants and animals as well as archeological findings that ought to be preserved in museums."

48. Article 9 of the 1924 Mongolian Rules to Protect the Antiquities further provides "one-of-the-kind rare items are prohibited to be transported abroad." A violation of Article 9

is punishable by a criminal penalty pursuant to Article 11 of 1924 Mongolian Rules to Protect the Antiquities.

**iii. <u>Mongolian Law on Cultural Heritage</u>**

49. Pursuant to Article 3.1.8 of the Mongolian Law on Cultural Heritage fossils and animal imprints are defined as "historical and cultural valuable objects."

50. Article 13.1 of the 2001 Mongolian Law on Cultural Heritage specifically provides that "[t]he territory and land bowels where historically, culturally and scientifically significant objects exist shall be under state protection and any such findings shall be a state property."

51. Furthermore, Article 13.2 of the Law on Cultural Heritage provides that any discoveries of culturally and scientifically significant objects must be registered with the local and national governments of Mongolia within one year of their discovery.

52. In addition, Article 16.3 of the Law on Cultural Heritage provides that "[i]t is prohibited to transfer the ownership rights of the exclusively valuable historical and cultural valuable object to foreign citizen or stateless person through selling, presenting and inheriting.

53. Lastly, Article 20.4 of the Law on Cultural Heritage mandates that in situations where "historical and cultural[ly] valuable objects are illegally sent abroad [outside

of Mongolia] or the object allowed to . . . cross[] the national [Mongolian] border" the Government of Mongolia must take all steps necessary to ensure the return of the object to Mongolia.

**iv. Criminal Law of Mongolia**

54. Mongolian Law has further protected the Mongolian Government's ownership interest in dinosaur fossils since as early as 1924 by criminalizing the illegal smuggling of such objects out of Mongolia.

55. In 1926, Chapter 15, Article 114 of the Criminal Law of the People's Republic of Mongolia was enacted. That Article provides that "[v]iolators of rules to guard and protect antiquities and relics preserved since ancient times and/or representing them, shall be sentenced up to one year in jail."

56. Furthermore, in 1929, the Mongolian Government enacted two laws which provided specific penalties for violations of restrictions on state owned property. More specifically, Chapter 2, Article 63 of the Criminal Law of the People's Republic of Mongolia provides "[t]hieving, embezzling, and misappropriating in any other forms of state and public property shall be sentenced up to seven years in prison." Additionally, Chapter 14, Article 118 of the Criminal Law of the People's Republic of Mongolia provides that "[v]iolators of rules to guard and protect antiquities preserved since ancient times . . . shall be sentenced to pay up to 600 tugrugs."

57. In 1986, the Government of Mongolia again enacted criminal laws that established penalties for the illegal export of dinosaur fossils. Specifically, Article 172.2 of the Criminal Code of Mongolia provided that "illegal transportation of . . . rare ancient animals, plants, valuable items of the museum, historically and archeologically significant items, through the Mongolian border shall be penalized by confiscation of the items, and imprisonment of up to five years in prison or be fined the amount between 100,000 tugrugs and 500,000 tugrugs."

58. Recently, in 2008, the Mongolia Government amended Article 175 of the Criminal Code of Mongolia to read that

> illegal transportation through the state border restricted goods, rare animals, . . . minerals and natural elements shall be punishable by either confiscation of property or a fine equal to 51 to 150 times the amount of minimum salary or 251 to 500 hours of forced labor or incarceration for a term of 3 to 6 months.

59. Article 175.2 of the 2002 Criminal Code of the Law of Mongolia, which specifies the criminal penalty imposed for violations of the anti-smuggling laws, provides that:

> in case historical or cultural valuable objects, museum exhibits, unique, rare and valuable findings of ancient animals and plants, archeological and paleontological findings and artifacts are smuggled through the national border, the assets shall be seized and the [persons] shall be imposed a fine . . . or imprisoned for two to five years.

### v. Mongolian Court Decision

60. The Mongolian Supreme Court issued an interpretation decree, number 24,2003, stating that the smuggling of any properties listed in the Law on Cultural Heritage shall be a crime regardless of the number, size and monetary value of the item.

## III. CLAIMS FOR FORFEITURE

61. Incorporated herein are the allegations contained in paragraphs one through sixty of this Complaint.

62. Title 18, United States Code, Section 542 states, in pertinent part

> Whoever enters or introduces, or attempts to enter or introduce, into the commerce of the United States any imported merchandise by means of any fraudulent or false invoice, declaration, affidavit, letter, paper, or by means of any false statement, written or verbal, or by means of any false or fraudulent practice or appliance, or makes any false statement in any declaration without reasonable cause to believe the truth of such statement, or procures the making of any such false statement as to any matter material thereto without reasonable cause to believe the truth of such statement, whether or not the United States shall or may be deprived of any lawful duties . . . .

63. Title 18, United States Code, Section 545 states, in pertinent part

> . . . Whoever fraudulently or knowingly imports or brings into the United States, any merchandise contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment,

> or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law - -
>
> Shall be fined under this title or imprisoned not more than 20 years, or both . . . .

64. Title 18, United States Code, Section 545, further provides that "[m]erchandise introduced into the United States in violation of this section . . . shall be forfeited to the United States."

65. Title 18, United States Code, Section 981(a)(1)(C) subjects to forfeiture "[a]ny property, real or personal which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7))."

66. Title 18, United States Code, Section 1956(c)(7)(A) defines "specified unlawful activity" as "any act or activity constituting an offense listed in section 1961(1) of this title."

67. Included among the list of Specified Unlawful Activities listed in section 1961(1) is Title 18, United States Code, Section 2314, which relates to interstate transportation of stolen property and Section 2315, which relates to sale or receipt of stolen goods.

68. Section 2314 of Title 18 of the United States Code, states in pertinent part

> Whoever transport, transmits, or transfers in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud . . . shall be fined under this title or imprisoned not more than ten years, or both . . . .

69. Section 2315 of Title 18 of the United States Code, states in pertinent part

> Whoever receives, possesses, conceals, stores, barters, sells, or disposes of any goods, wares, or merchandise . . . which have crossed a State or United States boundary after being stolen, unlawfully converted, or taken, knowing the same to have been stolen, unlawfully converted, or taken . . .[s]hall be fined under this title or imprisoned not more than ten years, or both . . . .

70. Pursuant to Title 19, United States Code, Section 1595a(c)(1)(A) "[m]erchandise which is introduced or attempted to be introduced into the United States contrary to law shall be . . . seized and forfeited [to the United States] if it - is stolen, smuggled, or clandestinely imported or introduced."

71. The Defendant Properties are subject to forfeiture pursuant to Title 19, United States Code, 1595a(c) because there is probable cause to believe that the Defendant Properties were stolen from Mongolia and introduced into the United States contrary to law, in that the Defendant Properties were (1) introduced into the commerce of the United States by means of

false statements and/or (2) transported in foreign commerce knowing they were stolen or converted.

72. The Defendant Properties are subject to forfeiture pursuant to Title 18, United States Code, Section 545 because there is probable cause to believe that the Defendant Properties are merchandise which were introduced into the United States in violation of that section, in that the Defendant Properties were (1) introduced into the United States by means of false statements in violation of Title 18, United States Code, Section 542 and/or (2) imported into the United States knowing they were stolen or converted.

73. The Defendant Properties are subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) because there is probable cause to believe that the Defendant Properties are property, real or personal, which constitutes or are derived from a violation of Title 18, United States Code Section 2314 and/or Section 2315.

WHEREFORE, plaintiff United States of America prays that process issue to enforce the forfeiture of the Defendant Properties and that all persons having an interest in the Defendant Properties be cited to appear and show cause why the forfeiture should not be decreed, and that this Court decree forfeiture of the Defendant Properties to the United States of America for disposition according to law, and that this Court grant plaintiff such further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated: New York, New York
February 5, 2013

PREET BHARARA
United States Attorney for
the Southern District of New York
Attorney for the Plaintiff
United States of America

By: ______________________
SHARON COHEN LEVIN
MARTIN S. BELL
Assistant United States Attorneys
One St. Andrew's Plaza
New York, New York 10007
Telephone: (212) 637-1060/2463

VERIFICATION

STATE OF NEW YORK )
COUNTY OF NEW YORK :
SOUTHERN DISTRICT OF NEW YORK )

Daniel Brazier, being duly sworn, deposes and says that he is a Special Agent with Immigration and Customs Enforcement/Homeland Security Investigations ("ICE/HSI"), Department of Homeland Security, and as such has responsibility for the within action; that he has read the foregoing complaint and knows the contents thereof, and that the same is true to the best of his own knowledge, information and belief.

The sources of deponent's information and the ground of his belief are conversations with other law enforcement officers and others, official records and files of ICE/HSI and the United States Government, and information obtained directly by deponent during an investigation of alleged violations of Title 18, United States Code, Sections 542, 545, 2314, and 2315 and Title 19, United States Code, Section 1595a.

DANIEL BRAZIER
Special Agent
Immigration and Customs Enforcement/
Homeland Security Investigations,
Department of Homeland Security

Sworn to before me this
5th day of February, 2013

NOTARY PUBLIC

Lisabeth A. Mendola-D'Andrea
Notary Public, State of New York
No: 01ME5079305
Qualified in Queens County
Commission Expires June 2, 2015